**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| COMMON CAUSE INDIANA, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:20-cv-1825 |
| CONNIE LAWSON, in her official capacity | ) |
| as Indiana Secretary of State; PAUL | ) |
| OKESON, S. ANTHONY LONG, | ) |
| SUZANNAH WILSON OVERHOLT, and | ) |
| ZACHARY E. KLUTZ, in their official | ) |
| capacities as members of the Indiana Election | ) |
| Commission; J. BRADLEY KING and | ) |
| ANGELA NUSSMEYER, in their official | ) |
| capacities as co-directors of the Indiana | ) |
| Election Division; and RAY ADLER, PAUL | ) |
| RAUSCH, KEVIN C. SMITH, and | ) |
| RANDALL VONDERHEIDE, in their | ) |
| official capacities as county election officials, | ) |
| and as representatives of a class of all | ) |
| members of Indiana county election boards | ) |
| and boards of elections and registration, | ) |
| | ) |
| *Defendants.* | ) |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      In 2019, the State of Indiana amended its Election Code by enacting Public Law 278-2019.  The new law stripped voters of standing to petition state courts for the extension of voting hours at polling places where voters face barriers to casting their ballots (the "Standing Amendment") and placed significant limitations on state courts' ability to extend polling-place hours at voting locations plagued with long lines, ballot shortages, equipment malfunctions, or

1

other conditions that burden the fundamental right to vote (the "Remedies Amendment")

(together, the "Challenged Amendments").

2.      Under the Standing Amendment, only county election boards—*i.e.*, the very

public officials tasked with administering elections—have standing to bring a request for

extension of polling-place hours to a state court. The board may seek the extension only if it

decides to do so unanimously.  The Standing Amendment provides no procedure for a

disenfranchised voter to seek redress through their county election board.  Nor does the Standing

Amendment explain how polling-place hours may be extended if a board's unanimous approval

cannot be obtained for logistical reasons or due to political or other improper influence.  Instead,

in order to extend polling-place hours, the Standing Amendment requires disenfranchised voters

to run the gauntlet of contacting and convincing their entire county election board to agree

unanimously to seek such a court order, retain counsel, file a petition, and obtain a ruling before

the 6:00 p.m. poll closing time.

3.      Shutting the courthouse doors to voters and erecting a multi-step process to obtain

an extension of polling-place hours to correct irregularities places a severe and unconstitutional

burden on all Indiana voters.  This burden is magnified in counties with five-member, rather than

three-member, county election boards, where the obstacle to obtaining an extension requires

convincing more public officials to take action.  No legitimate governmental purpose justifies

stripping voters of standing to bring complaints about polling-place inadequacies to state court.

Without a legitimate purpose, the new provision erects a burden that is unconstitutional *per se*.

Even if the State could conjure some justification for the Standing Amendment—and none is

apparent—any such justification would be outweighed by the harm to Indiana voters from

burdening—and, at times, denying—their fundamental right to vote.

4.     Indiana citizens' fundamental right to vote is further burdened by the new, restrictive conditions placed by the Remedies Amendment on Indiana courts' ability to extend polling-place hours.  Even if an election board unanimously requests that a state court extend polling-place hours, the court is permitted to grant such relief only if a polling location is *closed* during normal polling hours. The Remedies Amendment precludes a court from extending hours if the fundamental right to vote is abridged by other disenfranchising conditions, such as malfunctioning equipment, insufficient ballots, or extraordinary wait times.  Precisely these problems afflicted polling sites across Indiana during the November 2018 General Election.

5.     Barriers to casting ballots are not borne equally.  Historically and presently, such barriers and disruptions at polling places fall most heavily on communities of color, resulting in longer lines at polling places in predominantly non-white communities as compared to predominantly white communities.  In addition, existing disparities in wealth, transportation, housing, employment, education, and other factors mean voters of color are less likely to be able to bear the burden of delays caused by these longer wait times.

6.     By vesting the very governmental entity responsible for administering elections with the sole authority to seek an extension of polling-place hours in state court, the Standing Amendment also violates Indiana voters' constitutional right to procedural due process.  The United States Constitution ensures all Americans an opportunity to be heard before the government deprives them of their fundamental right to vote.  The Standing Amendment completely denies Indiana voters a state court forum to request an extension of polling-place hours, and provides no mechanism for voters to petition their county election board to seek such an extension.  Furthermore, the Standing Amendment ultimately cedes all regulation of polling-place hours to county election boards, which may have a self-interest in avoiding the political

and reputational impact associated with acknowledging problems with their administration of an election.

7.      Finally, the Challenged Amendments violate the Supremacy Clause of the United States Constitution.  Once a state creates courts of general jurisdiction with authority to hear claims brought under 42 U.S.C. § 1983, the Supremacy Clause forbids eliminating jurisdiction for only a particular type of such suits, especially where the result would be to immunize would-be defendants from litigation in state court.  The Standing Amendment violates this principle by stripping Indiana courts of authority to consider voters' claims against state and county election officials under Section 1983 when such claims specifically seek prospective injunctive relief in the form of an extension of polling place hours.  Likewise, the Remedies Amendment contravenes the Supremacy Clause by withdrawing from state courts the authority otherwise available under Section 1983 to extend polling-place hours where voters face disenfranchising conditions other than the physical closure of their polling place.

8.      Indiana will hold a statewide general election on November 3, 2020, with early in-person voting beginning on October 6, 2020.  The Challenged Amendments should be declared unconstitutional and enjoined statewide before they infringe citizens' fundamental right to vote during the November General Election

## JURISDICTION AND VENUE

9.      This Court has jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 42 U.S.C. §§ 1983, 1988.

10.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue in this district is proper under 28 U.S.C. § 1391(a) and (b), because

Defendants Lawson, Okeson, Long, Wilson Overholt, Klutz, King, Nussmeyer, Adler, and many

of the members of the defendant class of members of county boards of election and boards of

elections and registration, in their official capacities, reside within the district and because a

substantial part of the events giving rise to Plaintiff's claims occurred in the district.

**PARTIES**

12.    Plaintiff Common Cause Indiana is the Indiana affiliate of Common Cause, a non-

profit, nonpartisan public-interest group, which advocates in favor of ethics, good government,

constitutional law, and the elimination of barriers to voting.  Common Cause Indiana is based in

Indianapolis, Indiana, and it has worked to ensure the franchise to Indiana citizens for 46 years.

Common Cause Indiana has at least 15,000 members who are eligible to vote in state and federal

elections in Indiana.

13.    Defendant Lawson is the Indiana Secretary of State, and in that capacity is the

chief election official of the State of Indiana.  Ind. Code § 3-6-3.7-1.  She is also charged with

performing all ministerial duties related to the administration of elections by the State. Ind. Code

§ 3-6-4.2-2(a).

14.    Defendants Okeson, Long, Wilson Overholt, and Klutz are the current members

of the Indiana Election Commission, and in that capacity are responsible for, *inter alia*,

administering Indiana election laws; adopting rules to govern "the fair, legal, and orderly

conduct of elections"; issuing emergency rules to "implement a court order requiring the

commission, the election division, or an election board or official to administer an election in a

manner not authorized by" state law; advising and supervising local election and registration

officers; and exercising the powers of county election boards in the event a county election board

5

deadlocks on a decision.  Ind. Code § 3-6-4.1-14.  In the event provisions of the Indiana Election

Code are ruled unconstitutional, members of the Indiana Election Commission are statutorily

bound to advise county election boards not to enforce such provisions.  *Common Cause Ind. v.*

*Ind. Sec'y of State*, No. 112-cv-01603-RYL-DML, 2013 WL 1228468, at *4 (S.D. Ind. Sept. 6,

2013).

      15.    Defendants King and Nussmeyer are co-directors of the Indiana Election

Division, and in that capacity assist the Secretary of State and the Election Commission with the

administration of Indiana elections.  Ind. Code § 3-6-4.2-2(b); § 3-6-4.2-3(a)(1).

      16.    Defendant Adler is a member of the Hamilton County Election Board.  Together

with his colleagues on the Hamilton County Election Board, he is responsible for conducting

elections and administering the election laws within Hamilton County, preparing ballots, and

distributing those ballots to individual precincts within the county.  *See* Ind. Code § 3-6-5-14.

He is sued in his official capacity and as a representative under Fed R. Civ. P. 23(b)(1) of a class

of all members of Indiana county election boards and county boards of elections and registration

established under Ind. Code §§ 3-6-5-1, 3-6-5.2-1, 3-6-5.4-1, 3-6-5.6-1 (hereinafter "county

election boards").

      17.    Defendant Rausch is a member of the Porter County Board of Elections and

Registration.  Together with his colleagues on the Porter County Board of Elections, he is

responsible for conducting elections and administering the election laws within Porter County,

preparing ballots, and distributing those ballots to individual precincts within the county.

*See* Ind. Code §§ 3-6-5.6-7, 3-6-5-14.  He is sued in his official capacity and as a representative

under Fed R. Civ. P. 23(b)(1) of a class of all members of county election boards.

18.     Defendant Smith is a member of the Lake County Board of Elections and Registration.  Together with his colleagues on the Lake County Board of Elections, he is responsible for conducting elections and administering the election laws within Lake County, preparing ballots, and distributing those ballots to individual precincts within the county. *See* Ind. Code §§ 3-6-5.2-6, 3-6-5-14.  He is sued in his official capacity and as a representative under Fed R. Civ. P. 23(b)(1) of a class of all members of county election boards.

19.     Defendant Vonderheide is a member of the Tippecanoe County Board of Elections and Registration.  Together with his colleagues on the Tippecanoe County Board of Elections, he is responsible for conducting elections and administering the election laws within Tippecanoe County, preparing ballots, and distributing those ballots to individual precincts within the county.  *See* Ind. Code §§ 3-6-5.4-5, 3-6-5-14.  He is sued in his official capacity and as a representative under Fed. Civ. P. 23(b)(1) of a class of all members of county election boards.

## DEFENDANT CLASS ALLEGATIONS

20.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to certify a defendant class (the "Class") defined as follows:

> All members of Indiana county election boards and boards of elections and registration, as established under Ind. Code §§ 3-6-5-1, 3-6-5.2-1, 3-6-5.4-1, 3-6-5.6-1, in their official capacities.

21.     Members of the Class are readily identifiable on the basis of state statutes, as Indiana's county election boards and boards of elections and registration are established by the Indiana Election Code.

22.     The Class comprises all 280 individual members of Indiana's county election boards and county boards of elections and registration, as established by the Indiana Election

Code.  The Class members are dispersed across the State of Indiana. A Class of 280

geographically dispersed members is so numerous that joinder of all members is impracticable.

*See* Fed. R. Civ. P. 23(a)(1).

      23.     The questions that will drive the resolution of this action are common to the

Class. These questions include: (a) whether Ind. Code § 3-11.7-7-2 imposes an undue burden on

Indiana citizens' fundamental right to vote, in violation of the First and Fourteenth Amendments

to the U.S. Constitution; (b) whether Ind. Code §§ 3-11.7-7-3, 3-11.7-7-4 impose an undue

burden on Indiana citizens' fundamental right to vote, in violation of the First and Fourteenth

Amendments to the U.S. Constitution; (c) whether Ind. Code § 3-11.7-7-2 violates Indiana

voters' right to procedural due process under the Fourteenth Amendment of the U.S.

Constitution; and (d) whether Ind. Code §§ 3-11.7-7-2, 3-11.7-7-3, 3-11.7-7-4  violate the

Supremacy Clause of the U.S. Constitution by stripping state courts of their jurisdiction to hear

certain constitutional claims and afford remedies otherwise available under federal law. *See* Fed.

R. Civ. P. 23(a)(2).

      24.     The named class representatives' defenses are typical of those of the Class as a

whole. Upon information and belief, the defenses of the named class representatives will arise

from their common obligation to administer the Indiana Election Code within their counties. This

obligation is shared by all members of the Class, and no member of the Class has a unique

defense to the claims laid out in this Complaint. *See* Fed. R. Civ. P. 23(a)(3).

      25.     The named class representatives will fairly and adequately represent the interests

of the Class. The named class representatives are government officials who are obligated to

administer the Indiana Election Code and have the same interest as all members of the Class in

defending the statutes therein. Upon information and belief, the named class representatives will

be represented by competent counsel with sufficient qualifications and experience to adequately represent the interests of the Class. *See* Fed. R. Civ. P. 23(a)(4).

26.    Separate actions against each of the individual county election board members in Indiana would risk inconsistent or varying adjudications that would establish incompatible standards of conduct for the Plaintiff and its members. *See* Fed. R. Civ. P. 23(b)(1)(A).

## FACTUAL ALLEGATIONS

### I.    History of Extensions of Polling Place Hours in Indiana

27.    Before July 2019, Indiana voters who faced barriers to voting at their polling locations during normal polling hours on Election Day had the ability to seek an order from a state court extending the hours of particular polling places.

28.    Such orders, which could also be pursued by political parties, candidates for public office, and others prior to the 2019 enactment of the Challenged Amendments, were designed to safeguard the fundamental right to vote by ameliorating the disenfranchising effects of delays in the opening of polling places, unforeseen polling place closures, ballot shortages, voting machine issues, or other malfunctions in the administration of polling places.

29.    For example, in the recent statewide general election on November 6, 2018, voters who attempted to cast ballots in Johnson County experienced significant delays caused by equipment and server malfunctions.  Some Johnson County voters reported waiting in line for as long as four hours.  At least some voters could not wait this long and were thus unable to cast a ballot.[1] With the assistance of Common Cause Indiana, Johnson County voter Dan Newland filed a complaint in state court, asking for an extension of polling-place hours based on the delays

---

[1] Sandra Chapman, Steve Jefferson, and David Macanally, *Johnson County Clerk on Voting Issues, "This Is the Worst Election I've Ever Dealt With,"* 13 WTHR (Nov. 6, 2018, rev. Jan. 7, 2019), https://www.wthr.com/article/johnson-county-clerk-voting-issues-worst-election-ive-ever-dealt (last accessed on July 3, 2020).

caused by the equipment and server malfunctions.  The court ultimately issued an order after 6:00 p.m. denying the requested extension because the statutory time for polling places to close had already passed.[2]

30.    Also on November 6, 2018, a large number of polling locations in Porter County failed to open at the required time of 6:00 a.m.[3]  The Porter County Democratic Central Committee filed suit on behalf of voters in Porter County to extend the polling hours at locations where opening was delayed.  The Porter County Superior Court granted such relief, extending hours at twelve polling locations by the amount of time each had been improperly delayed.[4]  As a result of this court order, some voters who could not vote at 6:00 a.m. as they intended, and who otherwise would have been unable to return by the 6:00 p.m. closing, were therefore able to successfully cast a ballot.

31.    Furthermore, also on November 6, 2018, up to half of the polling places in Monroe County suffered from ballot shortages in the afternoon due to heavy voter turnout.  After hours of lobbying and advocacy by nonprofit organizations, including the non-partisan Election Protection Coalition, to the Monroe County election board, the county clerk filed a request to extend polling-place hours.  The Monroe County Circuit Court ordered polling-place hours extended county-wide to ameliorate problems of long lines and insufficient ballots at polling sites.[5]

---

[2] *Newland v. Johnson Cty., Ind. Election Bd.*, Case No. 41C01-1811-MI-000263 (Johnson Cty. Cir. Ct.).

[3] Bob Kasarda, Sarah Reese, *UPDATE: Porter County Election in Disarray; Vote Totals Not Expected Until Wednesday*, The Times of Northwest Indiana (Nov. 6, 2018), https://www.nwitimes.com/news/local/porter/update-porter-county-election-in-disarray-vote-totals-not-expected/article_f0cca5e6-7d8d-58f2-86bc-f0445e5b4ca2.html (last accessed on July 3, 2020)..

[4] *In re The Nov. 6, 2018 Gen. Election in Porter Cty., State of Ind.*, Cause No. 64D01-1811-MI-10723 (Porter Cty. Super. Ct.).

[5] Becca Costello, *Monroe Co. Keeping Polls Open Til 7PM After Delays Due to Ballot Shortages*, Indiana Public Media (Nov. 6, 2018), https://indianapublicmedia.org/news/several-monroe-co.-polling-places-run-out-of-ballots-as-turnout-soars.php (last accessed on July 3, 2020).; Mark Alesia and Amy Bartner, *Indiana Election 2018*

32.     The Standing Amendment forecloses any voter or other interested party from

seeking such extensions from their local courthouse.  Instead, every voter must leave the

effective exercise of their constitutional rights to the hope that, when problems arise, their county

election board will unanimously—and speedily—seek such relief itself, despite such action

amounting to a public acknowledgement of the board's failure to adequately administer an

election and a directive to extend the work hours of the board's employees and volunteers.

33.     The Remedies Amendment forecloses any Indiana court from granting such

extensions unless a polling place is physically closed.  An Indiana court is now powerless to

extend polling-place hours to protect the fundamental right to vote for voters who encounter

conditions—like those in Monroe and Johnson Counties in 2018—that compromise their ability

to effectively cast a ballot.

## II.     *Relevant Portions of the Indiana Election Code*

### A. *County Election Authorities*

34.     Each of Indiana's 92 counties has some form of an election board tasked with

conducting elections and administering the election laws within that county, preparing ballots,

and distributing those ballots to individual precincts within the county.  *See* Ind. Code § 3-6-5-

14.

35.     There are four types of county election boards in Indiana.[6]

36.     In 89 of Indiana's counties, the election board is defined in Ind. Code § 3-6-5-1, *et

seq.*, and is titled a "county election board."  Each board is responsible for conducting elections

---

*Live Coverage: Senator-elect Braun After Win Over Donnelly: 'I will not let you down,'* The Indianapolis Star (Nov. 6, 2018), https://www.indystar.com/story/news/politics/elections/2018/11/06/indiana-election-2018-indystar-live-coverage-braun-donnelly/1749126002/ (last accessed on July 3, 2020).

[6] While Ind. Code § 3-6-5-1 states that there are only three types of county election boards, Amendments in 2019 established a fourth type of board in Porter County.  Ind. Code § 3-6-5.6-1.

and administering the election laws within its county, preparing ballots, and distributing those ballots to individual precincts within the county.  Ind. Code § 3-6-5-14.  Each board comprises three members: the circuit court clerk and one person from each of the two major political parties.  Ind. Code § 3-6-5-2.  The members of the board elect a chair, Ind. Code § 3-6-5-8, who is obligated to call meetings of the board "whenever the chairman considers it necessary for the performance of the board's duties," Ind. Code § 3-6-5-11.  If the chair fails to call a meeting, the other two members may meet to execute the powers and duties of the board.  Ind. Code § 3-6-5-12.  The board may elect to delegate authorities, at its discretion, to the circuit court clerk, which he or she may then exercise on behalf of the board.  Ind. Code § 3-6-5-19.

37.     In counties containing 170,000 to 175,000 people, the election board is called the county "board of elections and registration," and comprises the circuit court clerk and one person from each of the two major political parties.  Ind. Code §§ 3-6-5.4-3, 3-6-5.4-4.  This type of board exercises the powers of county election boards described in the preceding paragraphs, along with the powers conferred on boards of registration and county executives.  Ind. Code § 3-6-5.4-5.  As of the most recent decennial Census, only Tippecanoe County meets this definition.

38.     In counties containing 400,000 to 700,000 people, the election board is likewise called the "board of elections and registration."  Ind. Code § 3-6-5.2-3.  Unlike the previous two types of boards, these boards comprise *five* members: the circuit court clerk and two persons from each of the two major political parties.  Ind. Code § 3-6-5.2-4.  This type of board exercises the same powers as the Tippecanoe County board, in addition to the powers conferred in the Election Code to the circuit court clerk.  Ind. Code § 3-6-5.2-6.  Unlike the other boards, this type of board may appoint a director to run daily operations of the board.  Ind. Code § 3-6-5.2-7.  As of the most recent decennial Census, only Lake County meets this definition.

39.     In counties containing 150,000 to 170,000 people, the election board is likewise called the "board of elections and registration."  Ind. Code §§ 3-6-5.6-1, 3-6-5.6-2.  This type of board also comprises five members: the circuit court clerk and two persons from each of the two major political parties.  Ind. Code § 3-6-5.6-4.  This type of board exercises the same powers as the Lake County board, Ind. Code § 3-6-5.6-7, and may appoint a director and assistant director to conduct daily operations, Ind. Code § 3-6-5.6-8.  As of the most recent decennial Census, only Porter County meets this definition.

40.     All four types of Indiana county election boards[7] share the same election administration duties defined in Ind. Code § 3-6-5-14.  *See* Ind. Code §§ 3-6-5.2-6, 3-6-5.4-5, 3-6-5.6-7.  All four types of Indiana county election boards are subject to the general terms of the Indiana Election Code.  *E.g.*, Ind. Code § 3-6-5.9-2 (using the term "board" to refer to county election boards and boards of elections and registration).

### B.  The Standing Amendment: Voters' Method for Requesting an Extension of Polling-Place Hours

41.     In 2019, the Indiana Election Code was amended to alter the means by which hours may be extended at polling places that are closed or rendered inaccessible to voters in a way that burdens their fundamental right to vote.  Ind. Pub. Law 278-2019.

42.     As a result of the Standing Amendment (Ind. Code § 3-11.7-7-2), individual voters may no longer petition a state court to extend voting hours at their polling place.  Rather, "[o]nly a county election board has standing in an Indiana court or with any other state governmental entity to file an action or petition to request the extension of the hour for closing the polls by the court or entity."  Ind. Code § 3-11.7-7-2(a).

---

[7] Throughout this Complaint, unless otherwise indicated, references to a "county election board" or "election board" refer to all four types of boards described in paragraphs 34-40.

43.     Moreover, "[t]he county election board may only file an action or petition" to extend polling-place hours "upon the unanimous vote of the entire membership of the board." Ind. Code § 3-11.7-7-2(b).

44.     The Standing Amendment does not prescribe the standard by which a county election board must assess whether to seek a court order for an extension of polling-place hours.

45.     Further, the Standing Amendment does not provide any statutory method for a voter whose fundamental right to vote is burdened or denied due to conditions at their polling place to contact his or her election board or to petition that board to seek an extension of polling-place hours for affected locations.

46.     Further, the Standing Amendment does not provide guidance for how a petition to extend polling-place hours may proceed if a member of the county election board is unavailable or if the chairman refuses to call a meeting to consider a request to seek court action to extend polling-place hours.

47.     Further, the Standing Amendment does not provide a mechanism for a voter to seek redress from a state court if it becomes clear that one or more of the election board members opposes seeking a polling-place hour extension for a partisan or otherwise inappropriate reason.

48.     Further, the Standing Amendment does not provide for a dispensation from the unanimity requirement for the Porter and Lake County boards of elections and registration, which comprise five members, as opposed to three members.

49.     Instead of allowing a voter whose fundamental right to vote may be burdened or denied—by physical closure of her voting site or some other reason—to immediately seek injunctive relief from an Indiana court, the Standing Amendment requires such a voter to complete the following steps: (1) identify her county election board members, (2) determine how

14

to contact those persons or the appropriate support staff for the board, (3) present relevant and adequate information to the election board, (4) convince the court to convene and wait for it to do so, (5) wait for the board to consider the evidence and make a decision, (6) hope the decision is unanimously in the voter's favor, despite such a decision amounting to extra work for the board and other election officials, an admission by the board that its own administration of elections is faulty, and, perhaps, a step toward extending polling-place hours in a way that could disadvantage the electoral prospects of the political party with which one or more of the members of the board are affiliated, (7) wait for the board to retain counsel, (8) wait for retained counsel to prepare and file a petition in state court, (9) wait for the court to receive, process, and consider the filing, (10) wait for the court to rule, and, if the court denies the request, (11) hope that the election board immediately seeks appellate review.  All of these steps must occur before 6:00 p.m. if a court's ruling is to have any practical effect.

### C.  The Remedies Amendment: Judicial Authority to Order an Extension of Polling-Place Hours

50.    The 2019 amendments to the Indiana Election Code also included the Remedies Amendment (Ind. Code §§ 3-11.7-7-3, 3-11.7-7-4), which sets strict and unreasonable limitations on the discretion of Indiana courts faced with a request to extend polling-place hours.  Such a court must determine which precincts were affected, how long the relevant polling locations were substantially delayed in opening or were closed during voting hours, whether substantial evidence exists that voters were prevented from casting a ballot due to delay or closure of the polls during the relevant hours, and whether extension of polling-place hours is the only means

by which any harm can be ameliorated.[8]  "If the court is unable to make the applicable findings regarding a delay in opening or a subsequent closure of the polls," no extension may be ordered. Ind. Code § 3-11.7-7-3.

51.     The statutory standard does not provide for the extension of polling-place hours unless polls are *closed*—either via a delay in opening or closed midday.  There is no explicit provision for the extension of hours if a polling place remains open but is plagued with malfunctions or delays that create unreasonable wait times and/or have the effect of turning voters away, such as those that affected Monroe and Johnson Counties in the last statewide election.

52.     If an Indiana court determines it is appropriate under the statutory standard to issue an order extending polling-place hours, such extension may apply only to the locations where the closure occurred and for "a period of time not more than the time that the polls were closed" during the statutorily-mandated time for voting in Indiana.  Ind. Code § 3-11.7-7-4.

53.     By law, polling places in Indiana are to be open from 6:00 a.m. to 6:00 p.m., prevailing local time.  Ind. Code § 3-11-8-8.

### III.     *Burdens on the Franchise Caused by Poor Administration of Elections*

54.     Long lines can prevent voters who intended to vote from successfully casting a ballot.  One study estimated that 730,000 eligible voters did not vote in the 2012 election because of long lines and unreasonable wait times at their polling places.[9]

---

[8] Section 3-11.7-7-3 was further amended in 2020 to require the court to find that the county election board provided written notice to the Secretary of State  and the Indiana Election Division that the board filed the petition and received confirmation by the court of receipt of these filings.

[9] Charles Stewart III, *Managing Polling Place Resources*, Caltech/MIT Voting Technology Project (Nov. 2015), *available at* https://elections.delaware.gov/pdfs/manage_pp.pdf (last accessed on July 3, 2020).

55.     Long lines and unreasonable wait times also have long-term impacts on voter participation.  One study estimates that nearly 200,000 American voters likely did not vote in November 2014 because of the wait times they experienced in 2012.[10]

56.     An extension of polling place hours can ameliorate the effect of long lines by providing voters turned away by long lines the opportunity to return during extended hours to cast their ballots.

### IV.     Disproportionate Impacts of Challenged Amendments on Voters of Color and Voters Residing in Lake and Porter Counties

57.     The disenfranchising effects of long lines and unreasonable wait times are not borne equally.  According to a 2017 study, voters in predominantly non-white precincts experience voting lines that are twice as long, on average, as voters in predominantly white precincts, even when those precincts are in the same county.[11]  Another study, conducted in 2019, found that, when compared to voters in entirely-white neighborhoods, voters residing in entirely-Black neighborhoods waited 29% longer to vote and were 74% more likely to spend more than 30 minutes at their polling place.[12]  In the 2018 General Election, Latino voters waited 46% longer, and Black voters waited 45% longer, than white voters across the country.[13]

---

[10] Stephen Pettigrew, *The Downstream Consequences of Long Waits: How Lines at the Precinct Depress Future Turnout*, Univ. of Pa. Working Paper (2017), *available at* https://www.dropbox.com/s/7eis5yychwgqstw/pettigrew%20-%20lines%20and%20turnout.pdf?dl=0 (last accessed on July 3, 2020).

[11] Stephen Pettigrew, *The Racial Gap in Wait Times: Why Minority Precincts Are Underserved by Local Election Officials*, 132 Pol. Sci. Q. 527 (2017).

[12] M. Keith Chen, Kareem Haggag, Devin G. Pope & Ryne Rohla, *Racial Disparities in Voting Wait Times: Evidence from Smartphone Data*, NBER Working Paper No. 26487 (2019).

[13] Hannah Klain, Kevin Morris, Max Feldman, and Rebecca Ayala, *Waiting to Vote*, Brennan Center for Justice (June 3, 2020), *available at* https://www.brennancenter.org/sites/default/files/2020-06/6_02_WaitingtoVote_FINAL.pdf (last accessed on July 3, 2020).

58.     Longer voting lines in predominantly non-white precincts are often caused by disproportionate allocation of resources among precincts.[14]

59.     In addition, existing disparities in wealth, transportation, housing, employment, education, and other factors mean voters of color are less likely to be able to afford the additional costs of voting imposed by these longer wait times.[15]

60.     Voters of color are therefore both more likely to experience a disruption that would necessitate the extension of polling-place hours, and more likely to be disenfranchised as a result of their inability to obtain an extension under Indiana law, than are white voters.

61.     Because the county boards of elections and registration in Lake and Porter Counties comprise five members, rather than the three members present on the other 90 counties' election boards, the Standing Amendment requires voters in Lake and Porter Counties to convince an additional two individuals on their county election board to seek an extension of polling-place hours, as compared to other Indiana citizens.

62.     Further, 46% of residents in Lake County are people of color and 17% of residents in Porter County are people of color.[16]

## V.     *Elections During the COVID-19 Pandemic*

63.     The United States is currently in the grips of a pandemic caused by the novel coronavirus disease (COVID-19), which has spread around the world and is present in Indiana.

---

[14] Pettigrew, *supra* note 11.

[15] *See, e.g.*, Raymond E. Wolfinger, Benjamin Highton, and Megan Mullin, *How Postregistration Laws Affect the Turnout of Citizens Registered to Vote*, 5 *State Pol. & Pol'y Q.* 1 (2005); Cynthia Rugeley and Robert A. Jackson, *Getting on the Rolls: Analyzing the Effects of Lowered Barriers on Voter Registration*, 9 *State Pol. & Pol'y Q.* 56 (2009).

[16] United States Census Bureau, *QuickFacts, Lake County, Indiana*, https://www.census.gov/quickfacts/lakecountyindiana (last accessed on July 3, 2020); United States Census Bureau, QuickFacts, Porter County, Indiana, https://www.census.gov/quickfacts/portercountyindiana (last accessed on July 3, 2020).

The President of the United States declared a national emergency on March 13, 2020 to address the spread of this virus. Among the containment measures encouraged by government authorities at all levels has been in-home isolation and "social distancing," both of which avoid the congregation of people that can facilitate transmission of the virus.

64.    On March 25, 2020, the State of Indiana postponed its previously scheduled May 5, 2020 statewide primary election to June 2, 2020, citing the COVID-19 pandemic and the need to avoid exposing the public to the risk of spreading the virus during in-person voting.[17]  Indiana followed numerous other states that have likewise postponed their primary elections in response to the pandemic.

65.    On June 2, 2020, Indiana held its statewide primary election. News reports indicate that, due to issues related to COVID-19, many counties in Indiana drastically reduced the number of in-person polling locations available to Indiana voters. For example, only 22 of 250 vote centers in Marion County, 7 of 34 polling places in Monroe County, 2 of 9 vote centers in Boone County, 10 of 22 vote centers in Johnson County, and 12 of 120 vote centers in St. Joseph County were open on Election Day.[18]  Some voters in Marion County waited in line for two hours to cast their ballots.[19]

66.    Indiana's neighbor to the west, the State of Illinois, held its primary election on March 17, 2020. News reports indicate that Illinois polling locations—especially in Cook

---

[17] Tom Davies, *Indiana's May 5 Primary Postponed due to Coronavirus Threat*, ABC New & Associated Press (Mar. 20, 2020), https://abcnews.go.com/Health/wireStory/indianas-primary-postponed-due-coronavirus-threat-69709205 (last accessed on July 3, 2020).

[18] Chris Sikich, *Indiana Election Officials Have Message for Hoosiers: Please, Please, Please Vote by Mail*, The Indianapolis Star (May 15, 2020), https://www.indystar.com/story/news/politics/2020/05/15/county-election-officials-have-message-hoosiers-vote-mail/5190567002/ (last accessed on July 3, 2020).

[19] Chris Sikich, John Tuohy, Amelia Pak-Harvey, Justin L. Mack, and Shari Rudavsky, *Marion County Voters, Some Spurred by Protests, Find Long Lines on Election Day*, The Indianapolis Star (June 2, 2020), https://www.indystar.com/story/news/politics/2020/06/02/marion-county-voters-some-spurred-protests-find-long-lines-election-day/3125569001/ (last accessed on July 3, 2020).

County—were plagued with problems stemming from the fear caused by COVID-19.  Namely, poll workers and election judges withdrew from service in the days before the election or declined to report for duty for fear of contracting the virus, leading to numerous last minute polling-location changes and the failure of some polling locations to open on time on Election Day.[20]  Voting hours were extended by court order at forty polling locations in suburban Cook County alone to account for these problems.[21]

67.     Nearby Wisconsin held its primary election on April 7, 2020.  Collateral effects of the COVID-19 pandemic led to the closure of numerous polling places across the state.  For example, only 5 of 180 polling places in Milwaukee and 2 of 31 polling places in Green Bay were open on Election Day.[22]  News reports indicate that polling places were inundated with long lines that required voters to stand in line for hours—including up to four hours in Green Bay.[23]  Indeed, a hail storm pelted some voters forced to stand outside in line awaiting access to the polls.[24]  Polling hours were not extended in Wisconsin, resulting in an unknown number of

---

[20] Hal Dardick, *Chicago-area Election Judges Dropping Out, Polling Places Closing Amid Coronavirus Fears*, The Chicago Tribune (Mar. 14, 2020), http://www.chicagotribune.com/news/breaking/ct-coronavirus-chicago-cook-suburbs-election-judges-20200314-x3l24gcuyra3djtgnm6uvsl7oe-story.html (last accessed on July 3, 2020); Mina Bloom and Kelly Bauer, *Polling Places Moved Last Minute, Missing Ballot Boxes, No Hand Sanitizer: 'This Election Day Is a Disaster,'* Block Club Chicago (Mar. 17, 2020), https://blockclubchicago.org/2020/03/17/polling-places-moved-last-minute-missing-ballot-boxes-no-hand-sanitizer-this-election-day-is-a-disaster/ (last accessed on July 3, 2020); *Election Day Issues Prompt Delayed Openings for Several Polling Places in Chi*cago, NBC 5 Chicago (Mar. 17, 2020), https://www.nbcchicago.com/news/local/chicago-politics/election-day-issues-prompt-delayed-openings-for-several-polling-places-in-chicago/2238622/ (last accessed on July 3, 2020).

[21] Rachel Hinton, *Cook County to Keep 40 Suburban Polling Places Open Until 8 p.m., City to Keep Five Open Late*, Chicago Sun Times (Mar. 17, 2020), https://chicago.suntimes.com/politics/2020/3/17/21184370/cook-county-suburban-polling-places-open-late (last accessed on July 3, 2020).

[22] *Wisconsin Primary Recap: Voters Forced to Choose Between Their Health and Their Civic Duty*, New York Times (Apr. 7, 2020), https://www.nytimes.com/2020/04/07/us/politics/wisconsin-primary-election.html (last accessed on July 3, 2020).

[23] Kati Anderson, *Green Bay Voters Wait in Line Past Midnight to Cast Ballot in Primary Election*, WBAY (Apr. 7, 2020, rev. Apr. 8, 2020), https://www.wbay.com/content/news/Long-lines-cause-hours-long-wait-to-cast-ballots-in-Green-Bay-569461981.html (last accessed on July 3, 2020).

[24] *Wisconsin Primary Recap*, *supra* note 22.

voters being denied their fundamental right to vote due to their inability to wait in long lines to cast a ballot.

68.     Scientists and public health officials project that the COVID-19 pandemic will continue throughout 2020 and beyond.[25]  Public health officials maintain that a second wave is "inevitable," and likely to hit in the Fall of 2020.[26]  Public health officials further warn that the virus will continue to pose a serious threat to public health and safety until a vaccine becomes widely available,[27] and have projected that it is unlikely that an FDA-approved vaccine will be mass produced and widely available in time for the November 2020 election.[28]  In Indiana specifically, the state government announced on July 1, 2020, that it would slow its plans to fully reopen the Indiana economy, which has been subject to restrictions designed to contain the spread of COVID-19.  In making this announcement, Indiana Governor Eric Holcomb noted: "This virus is on the prowl . . . .  In some places it's gaining momentum. It's not slowing down."[29]  Across Indiana, COVID-19 infection rates are three times higher in geographic areas

---

[25] Savannah Behrmann, *'Convinced': Fauci Says There Will Be Coronavirus in the Fall After Trump Says 'It May Not Come Back'*, USA Today (Apr. 23, 2020), https://www.usatoday.com/story/news/politics/2020/04/22/coronavirus-dr-anthony-fauci-says-i-am-convinced-second-wave/3009131001/ (last accessed on July 3, 2020); John Lauerman, *Covid-19 Pandemic Likely to Last Two Years, Report Says*, Bloomberg News (May 1, 2020), https://www.bloomberg.com/news/articles/2020-05-01/covid-19-pandemic-likely-to-last-two-years-report-says (last accessed on July 3, 2020) (citing report from the Center for Infectious Disease Research and Policy at the University of Minnesota).

[26] Christina Maxouris, *US Could Be in for 'a Bad Fall and a Bad Winter' If It's Unprepared for a Second Wave of Coronavirus, Fauci Warns*, CNN (Apr. 29, 2020), https://www.cnn.com/2020/04/29/health/us-coronavirus-wednesday/index.html (last accessed on July 3, 2020); Savannah Behrmann, *supra* note 25.

[27] Devan Cole, *Fauci Admits Earlier Covid-19 Mitigation Efforts Would Have Saved More American Lives*, CNN (Apr. 12, 2020), https://www.cnn.com/2020/04/12/politics/anthony-fauci-pushback-coronavirus-measures-cnntv/index.html (last accessed on July 3, 2020).

[28] WUSA 9, *FDA Approves Coronavirus Vaccine Candidate to Begin Phase 2 Trial* (May 7, 2020), https://www.wusa9.com/article/news/health/coronavirus/fda-approves-coronavirus-vaccine-candidate-to-begin-phase-2-trial/507-7119865c-3ffb-42b0-8066-6df24aae2c5d (last accessed on July 3, 2020); *Dr. Anthony Fauci & CDC Director Senate Testimony Transcript* at 32, Rev (May 12, 2020), https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12 (last accessed on July 3, 2020).

[29] Ethan May and Shari Rudavsky, *Gov. Holcomb Announces New Coronavirus Phase: It's Stage 4.5, Beginning Saturday*, The Indianapolis Star (July 1, 2020),

where the population is more than 50% non-white, as compared to areas where the population is less than 10% non-white.[30]  As a result of the continuing threat posed by the COVID-19 pandemic, it is highly likely that polling place closures, delays, and other issues that are likely to necessitate extensions of polling-place hours in Indiana will recur in the November 3, 2020 General Election.

### VI.    Plaintiff's Standing

69.    The core mission of Common Cause Indiana is to protect the voting rights of Indiana citizens.  It carries out this mission through activities such as lobbying Indiana legislators regarding election-related legislation, tracking problems at voting sites on Election Day, fielding calls from voters who report difficulties voting on Election Day, and assisting such voters in pursuing legal action to ensure their ability to cast their votes.

70.    In past elections, including the statewide general election in 2018, Common Cause Indiana has assisted voters in obtaining counsel and filing emergency requests on Election Day to extend polling-place hours.  Common Cause Indiana assisted Dan Newland in retaining counsel and filing a request to extend polling-place hours in Johnson County in 2018.

71.    Common Cause Indiana expended time and resources lobbying against the Challenged Amendments, including meeting with members of the Indiana General Assembly.

72.    Common Cause Indiana expended time and resources preparing for the June 2, 2020 Indiana Primary Election, including training volunteers in advance of Election Day.  As part of training its volunteers, Common Cause Indiana spent time and resources educating them

---

https://www.indystar.com/story/news/health/2020/07/01/coronavirus-indiana-new-stage-begin-saturday-slow-spread-covid-hotspots/5358005002/ (last accessed on July 4, 2020).

[30] Emily Hopkins and Shari Rudavsky, *COVID-19 Hit These Indiana ZIP Codes the Hardest, IndyStar Analysis Shows*, The Indianapolis Star (July 2, 2020, rev. July 5, 2020), https://www.indystar.com/story/news/health/2020/07/02/indiana-covid-19-zip-code-analysis-neighborhoods-black-latino-impact/3241567001/ (last accessed on July 6, 2020).

about the limitations on any efforts to extend polling-place hours under the Challenged Amendments. Such training sessions run for a fixed amount of time. The time Common Cause Indiana spent training volunteers on the effects of the Challenged Amendments diverted time from the other topics typically covered in such training sessions.

73. Common Cause Indiana expects to expend additional time and resources in advance of the November 3, 2020 General Election to educate voters, volunteers, and its members on the effects of the Challenged Amendments, and to develop and deliver related training materials to its Election Day volunteers. Common Cause Indiana also expects to expend time and resources on Election Day itself assisting voters in actually navigating this process, and in advocating on their behalf to county election boards where an extension of polling-place hours proves necessary to prevent their disenfranchisement. The time and financial resources Common Cause Indiana expects to expend to prepare for and address the effects of the Challenged Amendments will be diverted from projects and activities Common Cause Indiana otherwise undertakes both before and during Election Day.

74. Common Cause Indiana has been compelled to expend, and expects to continue to expend, the aforementioned time and resources in order to combat the effects of the Challenged Amendments to the Indiana Election Code, which have made it more difficult to seek and obtain the extension of polling-place hours and thus frustrate Common Cause Indiana's core mission of protecting the voting rights of Indiana citizens.

75. Common Cause Indiana's members include numerous Indiana voters whose fundamental right to vote in the November 2020 election is at risk due to the Challenged Amendments.

76.     Protecting the rights of Indiana voters is germane to Common Cause Indiana's purpose.

77.     The injunctive relief sought does not require the participation of Common Cause Indiana's individual members.

## CAUSES OF ACTION

## COUNT I

**Undue Burdens on the Fundamental Right to Vote in Violation
of the First and Fourteenth Amendments to the United States Constitution**

78.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

79.     Under the First and Fourteenth Amendments to the United States Constitution, a court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the plaintiff's fundamental right to vote against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling opinion) (internal quotation marks omitted); *accord Tripp v. Scholz*, 872 F.3d 857, 864 (7th Cir. 2017).

80.     The Standing Amendment (1) strips voters of the right to seek the extension of polling hours at polling locations where they have been disenfranchised; (2) fails to provide a clear mechanism for a voter to seek and obtain the necessary unanimous approval of his or her local election authority to petition for such an extension; and (3) contains an inflexible requirement of a unanimous vote of "the *entire* membership" of a county board, thus providing

no means for a polling location's hours to be extended if even a single member of a relevant county board is absent, unreachable, or unwilling to protect his or her constituents' fundamental right to vote. These provisions impose—individually and collectively—a severe burden on Indiana voters' fundamental right to vote.

81.    There is no legitimate state interest in restricting standing to seek redress for an undue burden on—or outright denial of—the fundamental right to vote resulting from closed polling places or other barriers to voting to the unanimous vote of the very election officials tasked with carrying out elections and bearing the public scrutiny that comes with maladministration of such elections. Nor is there any legitimate state interest in denying voters a statutory method to petition their local election officials to seek an extension of polling-place hours. Absent a legitimate state interest, the burdens imposed by Ind. Code § 3-11.7-7-2 on all Indiana voters require that such provision be invalidated under the First and Fourteenth Amendments.

82.    Even if the State proffers a purported interest for the Standing Amendment, the burdens imposed on voters by Ind. Code § 3-11.7-7-2 are so severe as to outweigh any benefits of this provision and it must therefore be invalidated under the First and Fourteenth Amendments.

## COUNT II

### Undue Burdens on the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments to the United States Constitution

83.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

84.    The severe limitations imposed by the Remedies Amendment on state courts' authority to extend polling-place hours when voters' fundamental right to vote is being infringed

for a reason other than actual closure of or a delay in opening the polls—such as equipment malfunctions, lack of poll workers, lack of adequate ballots, or unreasonably long lines—burdens the fundamental right to vote of all Indiana voters.

85.    There is no legitimate state interest in revoking a state court's ability to extend polling-place hours where conditions arise other than physical closure that nonetheless deny voters the ability to effectively exercise their right to vote.  Such problems at a polling place can effectively disenfranchise voters.  Absent a legitimate state interest, the burdens imposed by Ind. Code §§ 3-11.7-7-3, 3-11.7-7-4 require that such provision be invalidated under the First and Fourteenth Amendments.

86.    Even if the State proffers a purported interest for the Remedies Amendment, the burdens imposed on voters by Ind. Code §§ 3-11.7-7-3, 3-11.7-7-4 are so severe as to outweigh any benefits of these provisions, and they must therefore be invalidated under the First and Fourteenth Amendments.

## COUNT III

### Undue Burdens on the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments to the United States Constitution

87.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

88.    The effects of the Challenged Amendments, operating together, burden all Indiana voters' fundamental right to vote.

89.    For the reasons described in the preceding paragraphs, there is no legitimate state interest in the operation of the Challenged Amendments individually; nor is there any legitimate state interest in their combined effect.  Absent a legitimate state interest, the burdens imposed by

Ind. Code §§ 3-11.7-7-2, 3-11.7-7-3, and 3-11.7-7-4 together require that such provisions be invalidated under the First and Fourteenth Amendments.

90.    Even if the State proffers a purported interest for the Challenged Amendments, the burdens imposed on voters by Ind. Code §§ 3-11.7-7-2, 3-11.7-7-3, and 3-11.7-7-4 together are so severe as to outweigh any benefits of these provisions, and they must therefore be invalidated under the First and Fourteenth Amendments.

### COUNT IV

### Violation of Procedural Due Process under the
### Fourteenth Amendment to the United States Constitution

91.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

92.    The Fourteenth Amendment requires that any deprivation by the government of a citizen's constitutionally protected liberty or property interest be accompanied by constitutionally adequate due process.  *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019).

93.    The fundamental right to vote is a constitutionally-protected liberty interest. *Worley v. Waddell*, 819 F. Supp. 2d 826, 831 (S.D. Ind. 2011).

94.    Maladministration of elections, closures of polling locations, or polling-place malfunctions causing Indiana voters to be unable to cast ballots absent an extension of polling-place hours amounts to a deprivation of eligible citizens' fundamental right to vote.

95.    The Standing Amendment strips Indiana voters of standing to directly obtain *any* state-law process or right to be heard regarding an extension of polling-place hours before the deprivation of their fundamental right to vote is complete.

96.    The Standing Amendment provides no guidance or mechanism for citizens to petition their county election board to assemble, consider the need for the extension of polling-place hours, unanimously vote in favor of legal action, and file a motion in state court for an extension of polling-place hours.  Nor does the Standing Amendment provide any guidance to citizens who encounter a county election board that is unable to meet and confer or that makes a decision regarding polling-hour extensions based on inappropriate reasons.

97.    Fundamentally, procedural due process under the U.S. Constitution requires that "wielders of governmental power must be subject to the limits of law, and . . . the applicable limits should be determined, not by those institutions whose authority is in question, but by an impartial judiciary." *Marozsan v. United States*, 852 F.2d 1469, 1478 n.18 (7th Cir. 1988) (en banc) (quoting Fallon, *On Legislative Courts, Administrative Agencies, and Article III*, 101 Harv. L. Rev. 916, 938 (1988)).  A law that effectively strips courts of the ability to review the constitutionality of a government agency's actions "must be just as unconstitutional as the underlying action of the Administrator." *Id.* at 1478.

98.    In restricting standing to seek an extension of polling-place hours to county election boards, the Standing Amendment limits the jurisdiction of Indiana courts to hear certain disputes regarding Indiana citizens' ability to exercise their fundamental right to vote.  The Standing Amendment confers on the very governmental entity tasked with protecting those citizens' fundamental right to vote, through the administration of elections, the sole power to confer jurisdiction upon state courts to adjudicate citizens' deprivation of their fundamental right to vote.

99.    Accordingly, Ind. Code § 3-11.7-7-2 provides county election boards with a means to immunize themselves from judicial review in state court of the unconstitutional or

otherwise unlawful administration of their duties.  This amounts to a complete lack of constitutionally adequate process—indeed, of any process—for Indiana voters in need of an extension of polling-place hours to remedy the deprivation of their protected liberty interest in exercising their fundamental right to vote.

## COUNT V

### Violation of Supremacy Clause of the United States Constitution

100.    Plaintiff realleges and incorporates by references all prior paragraphs of this Complaint as though fully set forth herein.

101.    Indiana state courts are courts of general jurisdiction that regularly exercise jurisdiction over claims for prospective injunctive relief brought pursuant to 42 U.S.C. § 1983.

102.    The Standing Amendment strips Indiana state courts of jurisdiction to consider any "action or petition to request the extension of the hour for closing the polls," unless such action or petition is brought by a county election board.  Ind. Code § 3-11.7-7-2(a).  The Standing Amendment therefore strips Indiana courts of jurisdiction to consider constitutional claims under 42 U.S.C. § 1983 that seek prospective injunctive relief, in the form of an extension of polling-place hours, brought by voters, political parties, candidates for public office, public interest groups, or any other entity other than a county election board.

103.    The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

U.S. Const., Art. VI, cl. 2.

104.    Where a state makes the "decision to create courts of general jurisdiction that regularly sit to entertain" suits brought under 42 U.S.C. § 1983, the Supremacy Clause does not permit state law to strip such courts of jurisdiction to hear "only a particular species of [§ 1983] suits," seeking particular relief on behalf of particular plaintiffs and against particular defendants. *Haywood v. Drown*, 556 U.S. 729, 740-42 (2009).

105.    The Standing Amendment therefore contravenes the Supremacy Clause by creating a statutory scheme "designed to shield a particular class of defendants ([state and county election officials]) from a particular type of liability ([prospective injunctive relief to extend polling-place hours in the wake of a violation of the fundamental right to vote]) brought by a particular class of plaintiffs ([anyone other than county election boards])."  *Id.* at 741-42.

106.    The Remedies Amendment limits a state court's authority to extend polling-place hours to "polls whose opening was delayed or which closed during the hours set" for voting by state law.   Ind. Code § 3-11.7-7-4(a).   In contrast, Section 1983 permits a court to provide prospective injunctive relief in the form of an extension of polling-place hours to remedy a burden on the fundamental right to vote—whether caused by the physical closure of a polling place or some other disenfranchising condition.

107.    Consistent with *Haywood*, the Remedies Amendment therefore also violates the Supremacy Clause because it withdraws from state courts the authority to provide a specific subset of remedies otherwise available under federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against the Defendants:

A. An order issued before the November 3, 2020 General Election, preliminarily enjoining Defendants, their respective agents, officers, employees, successors, and all persons acting in concert with each or any of them from implementing, enforcing, administering, invoking, or giving any effect to the Challenged Amendments, and directing Defendants Okeson, Long, Wilson Overholt, and Klutz, in their official capacities as members of the Indiana Election Commission and pursuant to the duties of the Indiana Election Commission as defined in Ind. Code § 3-6-4.1-14, to adopt rules, or emergency rules, requiring election officials across Indiana not to implement, enforce, administer, invoke, or give any effect to the Challenged Amendments during the November 3, 2020 General Election;

B. An order declaring that the Challenged Amendments violate the First and Fourteenth Amendments to the United States Constitution and the Supremacy Clause of the United States Constitution;

C. An order permanently enjoining Defendants, their respective agents, officers, employees, successors, and all persons acting in concert with each or any of them from implementing, enforcing, administering, invoking, or giving any effect to the Challenged Amendments;

D. An order permanently enjoining Defendants, their respective agents, officers, employees, successors, and all persons acting in concert with each or any of them from asserting, in any action filed to obtain an order extending polling-place hours, that voters, political

parties, candidates for public office, public interest groups, or any other entity within the relevant jurisdiction lack standing to seek such relief based on the Standing Amendment;

E. An order permanently enjoining Defendants, their respective agents, officers, employees, successors, and all persons acting in concert with each or any of them from asserting, in any action filed to obtain an order extending polling-place hours, that a state court lacks authority to extend polling-place hours because, pursuant to the Remedies Amendment, polling places were not physically closed;

F. An order directing Defendants Okeson, Long, Wilson Overholt, and Klutz, in their official capacities as members of the Indiana Election Commission and pursuant to the duties of the Indiana Election Commission as defined in Ind. Code § 3-6-4.1-14, to adopt rules, or emergency rules, requiring election officials across Indiana not to implement, enforce, administer, invoke, or give any effect to the Challenged Amendments, including by asserting, in any action filed in state court to obtain an order extending polling-place hours, that voters, political parties, candidates for public office, public interest groups, or any other entity within the relevant jurisdiction lack standing to seek such relief and/or that such relief is unavailable on account of the limitations in the Remedies Amendment, and to advise election officials of the same;

G. An order awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. §§ 1988; and

H. Such other and further relief as the Court deems just and proper.

Dated: July 8, 2020

*/s/ Gregory M. Schweizer*
Gregory M. Schweizer
Brent R. Austin (*pro hac vice forthcoming*)
Sarah Kinter (*pro hac vice forthcoming*)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7648 (tel.)
(312) 692-1718 (fax)
gschweizer@eimerstahl.com
baustin@eimerstahl.com
skinter@eimerstahl.com

Aneel L. Chablani (*pro hac vice forthcoming*)
Ami Gandhi (*pro hac vice forthcoming*)
Jennifer Terrell (*pro hac vice forthcoming*)
Chicago Lawyers' Committee for Civil Rights
100 North LaSalle Street
Suite 600
Chicago, IL 60602
(312) 888-4191 (tel.)
(312) 630-1127 (fax)
achablani@clccrul.org
agandhi@clccrul.org
jterrell@clccrul.org

Ezra Rosenberg (*pro hac vice forthcoming*)
Bradley Phillips (*pro hac vice forthcoming*)
Ryan Snow (*pro hac vice forthcoming*)
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW
Suite 900
Washington, DC 20005
(202) 662-8600 (tel.)
(202) 783-0857 (fax)
erosenberg@lawyerscommittee.org
bphillips@lawyerscommittee.org
rsnow@lawyerscommittee.org

*Attorneys for Common Cause Indiana*