UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA  )<br>  )<br>    Plaintiff,  )<br>  )<br>  ) Case No. 1:20-cv-1825-RLY-TAB<br>    v.  )<br>  )<br>CONNIE LAWSON, in her official capacity )<br>as the Indiana Secretary of State, PAUL )<br>OKESON, S. ANTHONY LONG, )<br>SUZANNAH WILSON OVERHOLT, and )<br>ZACHARY E. KLUTZ, in their official )<br>Capacities as members of the Indiana )<br>Election Commission; J. BRADLEY KING )<br>and ANGELA NUSSMEYER, in their )<br>official capacities as co-directors of the )<br>Indiana Election Division; and RAY ADLER, )<br>PAUL RAUSCH, KEVIN C. SMITH, and )<br>RANDALL VONDERHEIDE, in their official )<br>capacities as county election officials, and as )<br>representatives of a class of all members of )<br>Indiana county election boards and boards of )<br>elections and registration, )<br>  )<br>    Defendants.  ) | |

**STATE DEFENDANTS' RESPONSE IN
OPPOSITION TO PRELIMINARY INJUNTION**

Over a year after Indiana passed a law clarifying the standing requirements and standards related to state-law petitions to extend the hours of polling places on Election Day, Common Cause, only a few months before the election, asks this Court to issue the extraordinary relief of preliminarily enjoining that law. The state defendants; Connie Lawson, in her official capacity as Indiana Secretary of State; Paul Okeson, S. Anthony Long, Suzannah Wilson Overholt, and Zachary E. Klutz, in

1

their official capacities as members of the Indiana Election Commission; and J. Bradley King and Angela Nussmeyer, in their official capacities as Co-Directors of the Indiana Election Division; respectfully submit their response brief in opposition to Plaintiff's Motion for Preliminary Injunction [ECF 4]. Because Common Cause has not met its burden of persuasion to justify the extraordinary, drastic remedy of a preliminary injunction, this Court should deny its motion.

## BACKGROUND

Over a year ago, in May 2019, the Indiana General Assembly enacted Public Law 278-2019, which made numerous changes to the Indiana Election Code. Among these changes included creating a statutory procedure for seeking an extension of polling hours in state court (what Plaintiffs refer to as the "Standing Amendment," codified at Indiana Code § 3-11.7-7-2) and requiring a state court to make particular findings justifying extending the closing time for a polling location (what Plaintiffs call the "Remedies Amendment," codified at Indiana Code §§ 3-11.7-7-3 and 3-11.7-7-4).

On July 8, 2020, Plaintiffs filed their Class Action Complaint for Declaratory and Injunctive Relief and Motion for Preliminary Injunction, challenging the Standing and Remedies Amendments as unconstitutional. Plaintiffs do not identify in their complaint whether they allege that the Standing Amendment and the Remedies Amendment violate the U.S. Constitution facially or as-applied. But Plaintiffs do not raise any factual allegations in their complaint, or arguments in their Motion for Preliminary Injunction, that any Indiana residents attempted to file

2

suit in an Indiana Court and had their claim dismissed due to a lack of standing as prescribed by Indiana Code. Accordingly, it can be presumed that Plaintiffs raise facial challenges to the Standing and Remedies Amendments.

Plaintiffs seek a preliminary injunction, arguing that the Standing Amendment abrogates a subsection of constitutional claims—claims that closing polls at the time prescribed by statute on Election Day violates the constitutional right to vote—that ordinarily could be brought in an Indiana trial court under 42 U.S.C. § 1983 (Section 1983) and the Remedies Amendment restricts the remedies that the trial court may grant that would ordinarily be available for a trial court to grant in a Section 1983 action. But there is a constitutional interpretation of the Standing and Remedies Amendment that renders all of the Plaintiff's claims unlikely to succeed on the merits. Consequently, this Court should deny Plaintiff's Motion for Preliminary Injunction.

## LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995) (emphasis added by *Mazurek* court).

To obtain a preliminary injunction, a party must show that it: (1) has a reasonable likelihood of success on the merits; (2) lacks an adequate remedy at law; and (3) will suffer irreparable harm if the preliminary injunction is not awarded. *Girl*

*Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The Seventh Circuit also considers whether the public interest would be served by entering a preliminary injunction. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

When evaluating whether a preliminary injunction is appropriate, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 513, 514 (7th Cir. 1999)). Rather, "likelihood of success remains a prerequisite." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 361 (5th Cir. 2013) (per curiam) (quoting *Ruiz v. Estelle*, 666 F.2d 854, 856-57 (5th Cir. 1982)). This rule is especially important where a plaintiff seeks to preliminarily enjoin state officials from enforcing state laws, for "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. Of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

## ARGUMENT

### I. Plaintiff Has Not Met Its Burden to Show Likelihood of Success on the Merits

Plaintiff seeks a preliminary injunction on the basis of its claims that the Standing Amendment and Remedies Amendment, both separately and viewed together, violate the First and Fourteenth Amendments by burdening the fundamental right to vote, as well as its claims that the Standing Amendment

violates the Supremacy Clause of the U.S. Constitution and voters' procedural due process rights. For the following reasons, Plaintiff has not met its burden to show likelihood of success on the merits and the request for a preliminary injunction should be denied.

### A. The Court should decline Common Cause's invitation to speculate about the challenged provisions.

As noted above, the only fair reading of Common Cause's complaint is that it is a facial challenge. The standards for such a challenge "set a high bar." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 476 (7th Cir. 2012). The Seventh Circuit, quoting a Supreme Court decision striking down a state election law in a facial challenge, recognized that "[f]acial challenges are disfavored for several reasons." *Id., quoting Washington State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). These reasons include the risk of a "premature interpretation of statutes on the basis of factually barebones records," the cases run "contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (internal quotes omitted). Ignoring these admonishments, Common Cause asks this Court to barrel ahead with the doubly extraordinary relief of granting a preliminary injunction and striking down a state law.

Common Cause gives no reason why, *if* there is some sort of constitutional infirmity to the statutory provisions, a voter could not bring the challenge in a

5

concrete, factually specific situation. That is, if Common Cause asserts that a state court cannot hear a petition under section 1983, the way to challenge that would be to bring a real case in state court and have the statute interpreted by that court. Otherwise, this Court's decision is being made prematurely based on a barebones record and speculation. As explained in more detail below, the challenged Indiana laws do not explicitly address section 1983, and there is no need for this Court to address this question in the abstract. Thus, the Court should reject Common Cause's facial challenge and deny the request for a preliminary injunction.

**B. The Standing and Remedies "Amendments" does not run afoul of the Supremacy Clause because they do not necessarily preclude bringing a Section 1983 claim in an Indiana court.**

Plaintiff characterizes the Standing and Remedies "Amendments" as divesting an Indiana Court of jurisdiction to hear a particular subsection of Section 1983 claims and removing an injunctive remedy otherwise available under Section 1983. But a more appropriate characterization of the challenged Amendments is that the Standing Amendment actually creates a statutory, state law cause of action for state law claims. The statute is silent as to filing a Section 1983 action in state court[1] and the Remedies Amendments modifies common law remedies and dictates the available

---

[1] Plaintiff note in its Motion that Defendant King testified before the Senate Committee on Elections that the Standing Amendment was not problematic because individuals seeking to extend polling hours could sue in federal court. Under Indiana law, video, or audio footage of legislative sessions does not constitute part of the legislative history or an expression of legislative intent, unless certain specific conditions are met. Ind. Code § 2-5-1.1 *et al*. So Plaintiff will not be able to rely on Defendant King's statements as evidence that the General Assembly intended for the Standing Amendment to divest a trial court jurisdiction to hear certain Section 1983 claims.

remedies under state law for claims brought specifically to Indiana Code § 3-11.7-7-2.

Under the long-recognized canon of constitutional avoidance, when faced with a constitutional challenge to a statute, a court should first determine whether there is a construction of the statute that is "fairly possible by which the [constitutional] question may be avoided." *Jennings v. Rodriguez*, __ U.S. __, 138 S.Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Because there is a construction of the Standing Amendment that passes constitutional muster, this Court should hold that Plaintiff is unlikely to succeed on the merits of its claim that the Standing Amendment violates the Supremacy Clause.

As noted above, Common Cause appears to bring only a facial challenge.

Notably, the petitions to extend polling hours brought before the Standing Amendment's enactment do not identify what cause of action the petitioners relied on to bring those actions. [*See* ECF No. 3-3; ECF No. 3-5]. None of these petitions claim to bring the petition to extend polling hours under Section 1983.[2] One of the court's orders identifies Indiana Code § 3-11-8-11(c)[3] as granting the Court jurisdiction to extend polling location hours on Election Day, but this provision does

---

[2] And there is significant incentive to bring the action under Section 1983 if appropriate, given the availability of a reasonable attorneys' fee award to a prevailing party. *See* 42 U.S.C. § 1988.

[3] "This subsection applies if a court order (or other order) has been issued to extend the hours that the polls are open under section 8 of this chapter. As provided in 52 U.S.C. 21082, the inspector shall identify the voters who would not otherwise be eligible to vote after the closing of the polls under subsection (a) and shall provide a provisional ballot to the voters in accordance with IC 3-11.7" Ind. Code § 3-11-8-11(c)(2018).

7

not create a cause of action for an individual to petition a court to extend polling hours.

Before the Standing Amendment's enactment, the Indiana Code did not set forth a clear private right of action for an Indiana resident to bring a claim under state law to require a polling location to extend polling place hours. The Indiana Code has no statutory provision similar to Section 1983 that would create a civil remedy against individual state officers or governmental entities. *Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006). The Indiana Supreme Court has explained that the Due Course of Law provision of the Indiana Constitution, art. 9, Section 12 "does not specify any particular remedy for any particular wrong. Rather, it leaves the definition of wrongs and the specification of remedies to the legislature and the common law." *Id.* at 499. Despite no apparent statutory cause of action allowing members of the public to bring these petitions requesting extensions of polling hours, individuals have brought petitions in the past a handful of times, as Common Cause notes in its Complaint. For those petitions not brought under Section 1983, the rest had to be brought under Indiana common law. And it has long been recognized that a state legislature "may freely alter, amend, or abolish the common law within its jurisdiction." *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op Marketing Ass'n*, 276 U.S. 71, 89 (1928).

Plaintiff relies on *Haywood* to argue that, once a state creates a trial court of general jurisdiction that can hear Section 1983 claims, the state cannot then divest the trial court of jurisdiction to hear a particular subsection of Section 1983 claims.

8

In *Haywood*, New York State passed a law that said "*no civil action* shall be brought in any court of the state . . . against any employee or officer of the department [of corrections]. . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." *Haywood v. Drown*, 566 U.S. 729, 733 (2009) (emphasis added). Furthermore, the New York statute required claims for damages against Department of Correction employees to be brought in the New York Court of Claims, a court of limited jurisdiction hearing only claims against the State with limited remedies compared to a Section 1983 action. *Id.* at 734. The statute at issue in *Haywood* undoubtedly prohibited Section 1983 claims against particular New York State employees.

Unlike the statute at issue in *Haywood*, the Standing Amendment does not prohibit "any civil action" to petition a court to extend polling hours. Rather, the Standing Amendment creates a statutorily prescribed procedure for extending polling location hours, where previously the options for petitioning a court for extending polling hours included a state common law cause of action or, presumably, the option of a federal law action under Section 1983 (although, as noted above, the petitions have been vague in terms of what provisions they're being brought under). The Standing Amendment apparently only eliminates an amorphous and standard-less state law common law cause of action by giving standing to bring such an action to a county election board, and the Remedies Amendment requires a trial court to make particular findings before ordering a polling location to extend its hours and limits

9

the length of time that the court may order the polling location to remain open. The Remedies Amendment does not speak to Section 1983 claims and does not explicitly limit remedies available for a Section 1983 claim. The Remedies Amendment specifically states that it applies only to actions brought under Indiana Code § 3-11, which, of course, does not include Section 1983 claims.

As Plaintiff recognizes in its motion, not all requests for an extension of polling-place hours will be premised on a constitutional violation remediable with a Section 1983 claim.[4] For those claims that are remediable with a Section 1983 claim, the Standing Amendment does not, on its face, prohibit Section 1983 claims like the statute at issue in *Haywood*. But for those claims that are not remediable with a Section 1983 claim, the State may modify a common law cause of action to create and prescribe a procedure for requesting an extension of polling place hours. *See, e.g. St. Louis Cty. Bd. of Election Comm'rs v. McShane*, 492 S.W.3d 177, 183 (Mo. Ct. App. 2016) (explaining that in the matter at hand, because plaintiffs had raised a violation of the U.S. Constitution to petition for extending polling hours, the court could order the polls to remain open despite a state statute dictating that a state court did not have jurisdiction to do so, and that a prior case—*Bush-Cheney 2000, Inc. v. Baker*, 34 S.W.3d 410 (Mo. Ct. App. 2000) —held otherwise because the plaintiffs had not raised

---

[4] Plaintiff illogically argues in a footnote that even though an action may not be remediable through a Section 1983 action, "the Supremacy Clause requires Indiana courts to remain open to such claims when state law is insufficient to protect the fundamental right to vote— or even actively infringes the right." If a voter's fundamental right to vote is allegedly being infringed upon, the voter will be able to state a plausible claim under the constitution through Section 1983.

10

constitutional claims and "unless constitutionally infirm, the courts are obligated to follow and apply the law as written by the legislature").

Because there is a possible construction of the Standing and Remedies Amendments that could render them constitutional, this Court should find that Plaintiff has not met its burden to show likelihood of success on the merits for this claim.

### C. The Amendments survive rational basis review as prescribed by *McDonald*

The Supreme Court has long held that the Constitution does not require States to design their elections laws to ensure all citizens—including those for whom voting "may be extremely difficult, if not practically impossible"—are able to vote. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807–09 & n.8 (1969) (applying rational basis scrutiny, rather than strict scrutiny, to an Illinois law that limited who could vote absentee because it was "not the right to vote that is at stake here but a claimed right to receive absentee ballots"). Importantly, the *McDonald* Court emphasized that the law before the Court did not "absolutely prohibit" a particular subset of citizens from exercising the right to vote. *Id.* at 809.

Here, the claimed right is essentially the right to have the polls remain open if it is extremely difficult or practically impossible for some voters to vote because of extenuating circumstances. Plaintiff does not allege that this law burdens the fundamental right to vote in any other manner, and Indiana law provides various avenues for voters to vote early if they are unable to do so on Election Day. Because Plaintiff does not allege an infringement on the fundamental right to vote,

11

Plaintiff's challenge should be subject to rational basis review under *McDonald*. Under rational basis review, if the challenged law has a rational relationship to a legitimate state interest, the law passes constitutional muster.

As discussed above, the Standing and Remedies Amendment does not necessarily preclude a Section 1983 claim from being filed in an Indiana trial court. If closing a polling location at the statutorily prescribed time creates a burden on a voter's right to vote, the voter may be able to bring a Section 1983 claim. Indiana Code § 3-11-8-8(b) does not grant the county election board independent authority to extend the hours of a polling location in the county. By implementing Indiana Code § 3-11.7-7-2, the legislature has provided an avenue for a county election board to bring an action in state court to seek a court order to seek an extension of the polling hours.

**D. The Amendments also survive the *Anderson-Burdick* test**

Because the Standing Amendment does not facially abrogate Section 1983 claims, and because the legislature has a legitimate interest in structuring the State's election laws to protect the integrity of the election, the Standing Amendment does not place an unconstitutional burden on the fundamental right to vote and this Court should deny plaintiff's request for preliminary injunction.

As the Seventh Circuit recently explained, the *Anderson-Burdick* test is deferential to state legislative judgments: it does not "allow the judiciary to decide whether any given election law is necessary" on the ground that unnecessary laws are "by definition an excessive burden." *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020).

On the contrary, the Supreme Court's decisions in *Anderson* and *Burdick* "foreclose[ ] that sort of substitution of judicial judgment for legislative judgment." *Id*. Because the "right to vote in any manner ... [is not] absolute," the government must play an "active role in structuring elections" and accordingly, election laws "invariably impose some burden upon individual voters." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

Courts applying the *Anderson-Burdick* test "must not evaluate each clause [of a State's election law] in isolation." *Luft*, 963 F.3d at 671. Instead, "[c]ourts weigh these burdens against the state's interests by looking at the whole electoral system. Only when voting rights have been severely restricted must states have compelling interests and narrowly tailored rules." *Id*. (internal citations omitted). Courts weigh these burdens against the state's interests by looking at the whole electoral system. *Burdick*, 504 U.S. at 434, 439.

Viewing the Indiana Election Code as a whole, Indiana's statutory scheme does not severely restrict the ability of a voter who may experience difficulty voting on Election Day by allowing only a county election board to bring a non-Section 1983 action to extend the polls and requiring a trial court to make certain findings before ordering a polling location to remain open in an action brought under Indiana Code § 3-11.7-7. If a voter anticipates being outside of his or her county from 6 a.m. to 6 p.m. on Election Day, the voter may request an absentee ballot by mail. Ind. Code § 3-11-10-24(a). As long as a voter is in line by 6:00 p.m., when the polls close, Indiana law allows the voter to cast a regular, non-provisional ballot. Ind. Code § 3-11-8-11(a).

13

Where individuals are not able to make it to the polls on Election Day, Indiana has several provisions that, as the Southern District of Indiana recognized earlier today, "make it easy to vote." *Tully v. Okeson,* Case 1:20-cv-01271-JPH-DLP, Dkt. 72 at 11. Specifically, early in-person voting is available between October 6, 2020 and November 2, 2020; voters meetings certain requirements may vote by mail with an absentee ballot; and eligible voters may have poll workers bring a ballot to them so they may vote at home. *Id.,* citing *See How to Vote Early in Indiana,* https://www.in.gov/idr/voteearly.htm. Also, before Election Day, an individual who meets the requirements set forth in Indiana Code § 3-11-10-26(d) may elect to cast an absentee ballot at a location designated by the circuit court clerk or a satellite office. The absentee voter board must allow individuals to cast their vote at least seven hours on two Saturdays before Election Day. *Id.*

### E. The Standing Amendment does not violate the Fourteenth Amendment

To trigger procedural due process rights, a recognized property or liberty interest must be implicated. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). Protected liberty interests may arise from two sources: the Due Process Clause itself and state law. *Kentucky Dep't of Corr.,* 490 U.S. 454, 460 (1989). If neither a liberty nor a property interest is at stake, then the State may "use any procedures it chooses, or no procedures at all." *Montgomery v. Anderson,* 262 F.3d 641, 645 (7th Cir. 2001).

While the right to vote is a fundamental right that generally constitutes a liberty interest, there is no recognized protected liberty interest in being able to cast a vote after the polls have closed when voting rights are not otherwise severely restricted. *See Luft*, 963 F.3d at 672. Furthermore, as described in the above section, the challenged Standing Amendment does not facially preclude bringing a Section 1983 claim in one of Indiana's state courts. Presumably, if an individual's liberty interest is implicated by a polling location closing at the statutorily prescribed time, then that individual likely has a cause of action under Section 1983 and has an opportunity to be heard.

Plaintiff has not met its burden to show likelihood of success on the merits for their Due Process claim and this Court should hold accordingly.

## II.    The Balance of Harms and the Public Interest Weigh Against Plaintiff's Motion

The status quo prior to Public Law 278-2019 is not as established as Plaintiff claims. First, Plaintiff points to only a handful of times that an Indiana resident petitioned a state court to extend a polling location's hours, demonstrating how rarely these petitions are filed. [*See* ECF No. 1, ¶¶ 29–31.] Second, as discussed *supra* Part 1.B., prior to the Standing Amendment, no Indiana statute appeared to provide an Indiana resident a clear cause of action for petitioning to extend polling hours. The petitions provided by the Plaintiff as examples of petitions to extend polling place hours do not identify Section 1983 as providing a private right of action for the petition, nor do they identify any other statute or provision under state or federal law as the source of law allowing the action. The Standing and Remedies Amendment

15

modifies a common law creation under state law and prescribes who may bring an action to extend polling place hours and dictates the circumstances under which a trial court may extend polling place hours for non-Section 1983 claims.

Finally, it is important to keep in mind the purpose of the statute and the state's interest in providing a clear procedure for extending the hours of the polls. Plaintiff does not address in its motion for preliminary injunction the situation where a court's order to extend a polling location's hours may have be determined to be incorrect upon appellate review. If that trial court's order was wrong, then the principles of fairness would render those after-hour votes invalid. But this is precisely why the Help America Vote Act requires that, if a court orders polls to remain open past the statutorily prescribed closing time, the votes cast after the statutorily prescribed closing time must be recorded on provisional ballots, kept separately from ballots cast during regular hours, in the event that the court's decision to extend polling hours is later determined on appeal to have been unjustified. 52 U.S.C. section 21082(c). Indiana has an interest in conforming its laws to federal requirements.

In sum, the State has a significant interest in promoting fair elections and avoiding voter confusion.

## CONCLUSION

Plaintiff has failed to carry its burden of persuasion for all conditions required to grant a preliminary injunction and accordingly, Plaintiff's motion for preliminary injunction should be denied.

        Respectfully submitted,

        Office of the Indiana Attorney General

        Jefferson S. Garn
        Deputy Attorney General

        Courtney Abshire
        Deputy Attorney General

        Parvinder Nijjar
        Deputy Attorney General

        *Counsel for State Defendants, Paul Okeson, S. Anthony Long, Suzannah Wilson Overholt, and Zachary E. Klutz, in their official capacity as members of the Indiana Election Commission, and Connie Lawson, in her official capacity as the Indiana Secretary of State; and J. Bradley King and Angela Nussmeyer, in their official capacity as members of the Indiana Election Division*

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 234-7119
Fax:    (317) 232-7979
Email: Jefferson.Garn@atg.in.gov